Mr. Justice Merrick
delivered the opinion of the court.
I am requested to deliver the opinion of the court in the case of Sheriff and Richards, executors, against Laura E. Brown and others, which is presented to this court for the purpose of construing the will of Andrew Roth well, deceased.
By the will of Andrew Rothwell, he gives, in the first item, unto his children, his library, to be divided amongst them as they may determine. Then he proceeds to give .specific devises and bequests to his several children. The question submitted to the court arises from comparing the seventh and eighth items with the second item, the words of which are as follows:
“I give and bequeath unto my daughter, Laura E. Brown (she having heretofore received her share of my estate), my gold watch, to be retained by her or bestowed upon such of my children or grandchildren as she may wish.”
He then proceeds to make specific devises of due proportions of his estate to each of his other children. In the seventh clause of the will he directs his executors, after applying a part of certain moneys arising from the proceeds of an insurance, to distribute the residue equally amongst his children, the share of his daughter Slater to be paid to his son-in-law.
Then in the eighth item he devises specifically to trustees a certain parcel of real estate, directing them to sell that *176 real estate and distribute the proceeds of such sale or sales- “ equally among my children, the share of my daughter Annie to be held in trust,” etc.
The question arises, as I have said, under the second clause, where he declares:
“I give and bequeath to my daughter Laura B. Brown (she having heretofore received her share of my estate), my gold watch,’5 etc.
Is that language so exclusive of the rights of Laura E. Brown as to preclude her from a participation with all the other children in the benefits of the bequests and devises in the seventh and eighth clauses of the will, where he says that the “ said moneys shall be equally distributed amongst my children?”
The contention on the one hand is, that by the parenthesis in the second clause, “ she having heretofore received her share of my estate,55 she is excluded. The contention on the other hand is, that by the broad and comprehensive term “ my children,” without discrimination or qualification, in the seventh and eighth clauses, she is embraced and entitled to participate. It is therefore purely a question of construction and ascertainment of the intention of the testator, to be gathered from the terms of his will.
Adjudications upon the construction of wills add very little to the capacity of a court to ascertain precisely what a testator meant.
Every will, unless it embraces and covers the use of technical terms, to which a definite legal operation has been assigned by the law, must be interpreted by the language of the will itself, subject, of course, to certain general prin-' ciples- of construction, but not to be qualified unless' under very peculiar circumstances, by decisions under this or that will which may present some supposed analogy to the terms used in the will in question.
The general rule of interpretation is found in 1 G-reenl., Ev., sec. 278. Discussing the question as to how far parol testimony may be used to qualify or aid in the interpretation of the language of a will, the author says:
*177 “The rule equally applicable to all written instruments is, that the terms of it are to be understood in their plain, ordinary and popular sense, unless they have in respect of the subject-matter, or by the known usage of trade, or the like, acquired a peculiar sense distinct from the popular use of the same words, or unless the context evidently points out in the particular instance, that it should be understood in some other or peculiar sense.”
Besides this general principle there is another general principle which I will quote from the case of Chase vs. Lockerman, 11 Gill & J., 185, which is especially applicable as an aid in the interpretation of this particular will. There a legacy was “ to be divided by the executors among the children, share and share alike, and paid to each of them, for the use of their respective children, and by each of them so applied.”
In that case some of the children were childless at the date of the will, and also at the death of the testator, and the contention was that the clause which I have read confined the legacy to those children who should have children, by reason of the force of the terms “ and paid to each of them for the use of their respective children, and by them to be so applied.” The court says on page 206:
“It is a well-established rule in the construction of wills, that where there is a general and particular intent apparent upon the face, the general intent, although first expressed, shall control and overrule the particular. Thus in 2 Williams on Executors, 714, it is said: ‘It must not, however, be understood, that because the testator uses, in one part of his will, words having a clear meaning in law, and in another part, words inconsistent with the former, the first words are to be cancelled or overthrown. A contrary principle is now fully established, in the doctrine already considered, that the general intent, although first expressed, shall overrule the particular.’
“It appears in this case most clearly from his own explicit declarations, that it was his great and leading'.object to *178 malee an equal distribution of his property amongst all his children, being governed in this last solemn act of his life in providing for his family and disposing of his estate by an equal and similar affection for each and every one of them. If, then, equality of bounty, to all his children was his great, leading and cardinal motive ; in the language of the books, if such was his general intent, and he has used language sufficiently strong to carry that intent into effect upon principle, it appears to be settled that such general intent is not to be frustrated by any inconsistent particular intent, but must be supported, and ultimately prevail.”
Those rules are quite sufficient aids to us in the interpretation of the will of Andrew Rothwell. It is manifest upon the face of the whole will that his general and paramount intent was to do equal justice among all his children. That idea pervades the whole scheme of the will. The initial clause is declaratory of it without any qualification:
“I give and bequeath unto my children my library, to be divided amongst them as they may determine.”
Then follows the clause in favor of Mrs. Brown:
“ I give and bequeath unto my daughter Laura E. Brown (she having heretofore received her share of my estate) my gold watch.”
The gold watch is the only bequest he makes to her, reciting that he has heretofore made provision for her. Then he goes on and makes provision for each of his other children, ample and proportionate to the provision which he declares that he had theretofore made for Mrs. Brown.
Having in this mode provided for each and all of his children a specific amount, which, of course, is apparently, from the scheme of his will, what is approximately a fair proportion, adequate and appropriate to the wants of each one, he is confronted in the seventh and eighth clauses with a residuum of property. That residuum of property he directs to be converted into money and divided amongst his children.
The great and cardinal scheme of the testator being to make an equal division, according to the parental obliga *179 tion, between his children, having assigned in the first part of the will a reason why he makes no greater specific provision for Mrs. Brown, not using words of exclusion from any part of his estate, but simply assigning as a reason why he makes only that specific provision in her favor, which is comparatively small when considered with reference to the other provisions, then he goes on, having satisfied his sense of justice and equity, with the general provisions on behalf of his children, without any qualification.
In view of the principles of law set forth in the two authorities above quoted, that the general intent is to prevail, and that the words of the will are to be construed according to their natural import, unless the context evidently points out that in the particular instance there should be some other construction, it appears to the court that this explanatory phrase with regard to Mrs. Brown exhausts itself entirely in the assignment of a reason why, apparently, he makes so small a specific provision for her, as compared with the specific provision for the other children.
The phrase is in point of fact an apology to her and the world for a seeming departure from parental obligation, in the outset of his will. The language, therefore, is fully gratified by this interpretation of his mind and thought, which makes consistent and gives full force to the expression ; because it is to be borne in mind that it is used, not in reference to any part of the estate, but is simply an assignment of a reason why, in his specific distribution, he makes only so small a specific provision for her.
It, therefore, does not, in the light of the requirement of a natural interpretation of language and of respect to the general intention, interfere with and exclude her from the provisions in the seventh and eighth sections of the will, which are, in their natural and proper signification, large enough to express an intention to do equal and exact justice between all his children, the objects of his affection and the objects of his bounty.
For these reasons the court feels itself constrained to *180 adopt the opposite conclusion to that which was reached by the court from which the appeal was taken, to reverse the decree and to declare that Mrs. Brown, in respect to the provisions in the seventh and 'eighth clauses of the will, is entitled to participate equally with all the other children, notwithstanding the provisions in her behalf and the expressions in the second item of the will.
The decree below is reversed and the cause remanded.